UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

UNITED STATES OF AMERICA                CASE NO. 3:07-CR-30034

VERSUS                                  JUDGE ROBERT G. JAMES

ROBERT LEE THOMPSON, JR. (01)           MAGISTRATE JUDGE HAYES

### RULING

Before the Court is a Motion for Imposition of a Reduce Sentence Pursuant to Section 404 of the First Step Act, filed by Defendant Robert Lee Thompson, Jr. [Doc. No. 51] The government opposes the motion, arguing Thompson is ineligible for relief. For the reasons set forth below, the Court finds Defendant is eligible for relief under the First Step Act.

### I.
#### BACKGROUND

On September 26, 2007, Thompson was charged in an indictment with two counts of possession with intent to distribute cocaine base ("crack cocaine") in violation of 21 U.S.C. §§ 841(a)(1). [Doc. No. 6]. Count 1 charged that on or about June 6, 2007, Thompson "did knowingly and willfully possess with the intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base," and Count 2 charged that on or about August 23, 2007, Thompson "did knowingly and willfully possess with the intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base." *Id.* at 1-2. The government filed an information of prior conviction against Thompson pursuant to 21 U.S.C. § 851, asserting he was subject to an enhanced penalty under 21 U.S.C. § 841. [Doc. No. 17]. With the § 851 enhancement, under the version of § 841(b)(1)(A) in effect at that time, Thompson's statutory penalty based upon the "50 grams or more" alleged in the indictment was a mandatory

minimum term of imprisonment of not less than 20 years (240 months) or more than life. 21 U.S.C. §§ 841(b)(1)(A)(iii) and 851 (2008).

On June 25, 2008, Thompson pleaded guilty pursuant to a written plea agreement to count two of the indictment. [Doc. No. 27]. The factual basis for the guilty plea provided that Thompson was accountable for "4 ½ ounces of crack cocaine" and "989.5 grams of crack cocaine." *Id.* The PSR attributed 1,195 net grams of cocaine base to Thompson for purposes of the Sentencing Guideline calculations. PSR at ¶ 20. With a total offense level of 31 and his Criminal History Category of II, the guideline imprisonment range was 121 to 151 months. *Id.* at ¶ 61. However, because the statutory minimum sentence exceeded the guidelines range, the guideline range became 240 months. *Id.* Thompson was sentenced to 240 months imprisonment on October 6, 2008, which was both the statutory minimum and a guideline sentence. [Doc. No. 34]. Thompson has been in custody since 2007 and has a projected release date of February 12, 2026.

## II.
### APPLICABLE LAW

At the time Thompson was sentenced, distribution of 50 grams or more of cocaine base carried a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment; however, if the offender had a prior felony drug conviction, his mandatory minimum sentence increased to twenty years. 21 U.S.C. § 841(b)(1)(A). If an offense involved more than 5 grams of cocaine base, the offender was subject to a mandatory minimum term of five years imprisonment and a maximum term of forty years; however, if the offender had a prior felony drug conviction, his mandatory minimum sentence increased to ten years, with a maximum sentence of life imprisonment. *Id.* at § 841(b)(1)(B).

In 2010, after more than two decades of substantial criticism from the Sentencing Commission and others in the law enforcement community that the harsh treatment of crack

cocaine offenses was fundamentally unfair when compared to offenses involving powder cocaine, Congress passed the Fair Sentencing Act. *Dorsey v. United States*, 567 U.S. 260, 268 (2012). Section 2 of the Fair Sentencing Act increased the drug quantities triggering the mandatory minimum for crack offenses "from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." *Id.* at 269. While the Act did not entirely eliminate the disparity between powder and crack cocaine, it did lower the 100–to–1 crack-to-powder ratio to 18–to–1.[1] *Id.* The Fair Sentencing Act took effect on August 3, 2010 but applied only to sentences imposed thereafter. *Id.* at 264.

In 2018, Congress passed the First Step Act, which made the revised crack cocaine minimums established by the Fair Sentencing Act retroactive. The First Step Act provides in relevant part:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

---

[1] The Fair Sentencing Act also eliminated the 5–year mandatory minimum for simple possession of crack. *Dorsey* at 269.

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194. In this matter, the government contends Thompson did not commit a "covered offense" and therefore is ineligible for relief under the First Step Act. [Doc. No. 258].

## III.
### DISCUSSION

**A.     Eligibility**

The government argues that the definition of "covered offense" set forth in the First Step Act "keys eligibility not on the defendant's statute of conviction, but on the specific 'violation' that the defendant 'committed.'" [Doc. No. 54 at 5-6]. In other words, the government contends it is the offense conduct, and not the statute underlying a defendant's conviction and penalty that determines eligibility under the First Step Act. In this matter, because the court at sentencing adopted the PSR's finding that Thompson's offense conduct involved 1,119.5 grams of cocaine base – an amount far in excess of the 280-gram threshold – it is the government's position that Thompson's violation does not constitute a "covered offense."[2] The Court disagrees, as it finds the government's construction of the First Step Act's definition of "covered offense" to be problematic in several respects.

Again, Section 404(a) of the First Step Act defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." The government first argues that when Congress uses the word "violation," it is referring to specific offense conduct and not a statute of conviction. [Doc. No. 258 at 5-6]. The Court finds nothing in the text of the

---

[2] Of course, the offense conduct is determined by a court (not a jury) utilizing the "preponderance of evidence" standard. *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir.2009). "Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing." *Id.* (quoting *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir.1995)).

statute or cases cited by the government persuading it that the government's position is correct.[3]

The government next asserts, "[b]y referring to a 'violation' that was 'committed' on a particular date, Section 404(a) sensibly grounds the eligibility inquiry in the actual conduct involved in the defendant's violation, rather than the statute under which the defendant was convicted." *Id.* at 5. But as one court has noted, the word "'committed' is easily read to refer solely to the timing of the conduct underlying the conviction." *United States v. Martin*, 2019 WL 2571148, *3 (E.D.N.Y. June 20, 2019). The government additionally argues that the term "statutory" (*i.e.*, "a violation of a Federal criminal statute, the *statutory* penalties for which were modified") would be redundant if "statutory" modified "statute" rather than "violation." *Id.* at 6-7. Again, the Court disagrees. The more natural reading is that "[t]he use of the term 'statutory' simply indicates that the penalties modified must be the penalties prescribed by statute, as opposed to a change in the Sentencing Guidelines, for example." *Martin* at *3; *see also United States v. Rose*, 379 F.Supp.3d 223, *3 (S.D.N.Y. 2019) (engaging in extended textual analysis and determining "statutory" modifies the adjacent noun phrase "Federal criminal statute"). Further, even if the phrase "the statutory penalties for which were modified by section 2 or 3 of the First Step Act" modifies "violation" rather than "Federal criminal statute," whether "violation" refers to the elements of the statute of conviction or the offense conduct would still be ambiguous.[4] However, the rule of lenity requires

---

[3] In support of its argument that "violation" refers to offense conduct rather than the statute of conviction, the government cites *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985) and *United States v. Hayes*, 555 U.S. 415 (2009). However, the Court finds the following cases undercut the government's position: *United States v. Davis*, 139 S.Ct. 2319, 2327, 2328-29 (2019) (to determine the meaning of the word "offense," courts must examine the statute's text, context, and history, because "offense" can refer to a generic crime, or it can refer to the specific conduct of an offender); *Torres v. Lynch*, 136 S. Ct. 1619, 1624 (2016) ("The substantive elements 'primarily define[] the behavior that the statute calls a 'violation' of federal law."); *Carr v. United States*, 560 U.S. 438, 446 (2010) ("For a defendant to violate this provision, . . . the statute's three elements must be satisfied in sequence, culminating in a post-SORNA failure to register.") (internal punctuation omitted).

[4] *See* n.3, *supra*.

that the ambiguity must be resolved in defendant's favor. *See e.g. United States v. Davis*, 139 S.Ct. 2319, 2333 (2019) ("ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor").[5]

Most importantly, the government's proposed construction and approach would premise the availability of a sentence reduction on uncharged conduct not considered by the jury, in violation of the constitutional rules set forth in *Apprendi* and *Alleyne*.[6] The government contends the constitutional rules set forth *Apprendi* and *Alleyne* do not apply to motions brought under the First Step Act, because those cases are not applied retroactively on collateral review. [Doc. No. 54 at 16-17]. The Court finds the government's position to be overly broad. The government is correct that neither *Apprendi* nor *Alleyne* apply retroactively to habeas motions brought pursuant to 28 U.S.C. § 2255.[7] *U.S. v. Brown*, 305 F.3d 304, 309 (5th Cir. 2002) (holding *Apprendi* does not apply retroactively to petitions filed pursuant to 28 U.S.C. § 2255 under the rule set out in *Teague v. Lane*, 489 U.S. 288 (1989)); *U.S. v. Olivera*, 775 F.3d 726, 730-31 (5th Cir. 2015) (holding *Alleyne* is not retroactively applicable to petitions filed under § 2255 under the rule set forth in *Teague*); *but see Danforth v. Minnesota*, 552 U.S. 264, 281 (2008) (the rule of *Teague* – *i.e.*, that a new constitutional rule applies retroactively to cases on collateral review only if it falls within

---

[5] The government's approach is problematic in another way, in that "it effectively requires the Court to employ a prosecutor-friendly 'way-back machine' to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect." *United States v. Pierre*, 372 F.Supp.3d 17, 22 (D.R.I. 2019); *accord Martin* at *3 (such an approach would be "especially problematic where the quantity of drugs at issue is at the margins").

[6] In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Alleyne v. United States*, 570 U.S. 99, 102 (2013), the Court held that any fact increasing a mandatory minimum must be submitted to the jury and found beyond a reasonable doubt.

[7] The substantive scope of section 2255 is the same as that of habeas corpus. *Hill v. United States*, 368 U.S. 424, 428 n.5 (1962); *United States v. Flores*, 981 F.2d 231, 235 (5th Cir. 1993).

one of two narrow exceptions – applies only to federal courts considering *habeas* petitions challenging state-court criminal convictions). However, while a sentence reduction is a form of collateral review, *see Wall v. Kholi*, 562 U.S. 545, 551 (2011), it is not necessarily the case that nonretroactivity principles apply to sentence reductions under 18 U.S.C. § 3582(c). *U.S. v. Tyree Lamar Slade*, 2019 WL 3061200, *3 (W.D. Va. July 12, 2019); *see also U.S. v. Fanfan*, 558 F.3d 105, 108 (1st Cir. 2009) (whether *Booker* and *Kimbrough* applied to sentence reductions based upon retroactive amendments to the Sentencing Guidelines is a question that "is analytically distinct from the question of retroactivity" addressed in *Teague*).

The underlying purposes of these two differing forms of collateral review supports the Court's finding that although new rules of constitutional law are not applied retroactively for purposes of habeas relief, they can be applied retroactively to motions seeking relief under the First Step Act. "The 'essential function' of § 2255 'is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence.'" *Light v. Caraway*, 761 F.3d 809, 812 (7th Cir. 2014) (quoting *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998)). Such relief is limited in that there are only four grounds upon which a federal prisoner may move for relief under section 2255.[8] *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). When considering motions under section 2255, courts begin with the presumption that the defendant has been fairly and finally convicted. *Id.* When a new constitutional rule regulates only the procedures for determining culpability (as opposed to the scope of the underlying criminal proscription), the need for finality in criminal cases outweighs "the countervailing imperative to ensure that criminal punishment is imposed only when authorized by

---

[8] Relief is available under section 2255 only where "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

law." *Welch v. United States*, 136 S.Ct. 1257, 1266 (2016) ("The chance of a more accurate outcome under the new procedure normally does not justify the cost of vacating a conviction whose only flaw is that its procedures conformed to then-existing constitutional standards.") (internal quotation marks omitted). Accordingly, constitutional rules regulating procedure to not apply retroactively to motions brought under section 2255.

In contrast, sentence reductions under the First Step Act are not so restricted. Such relief is available not because a sentence is fundamentally illegal, but rather, it is available due to "a congressional act of lenity." *Dillon v. United States*, 560 U.S. 817, 828 (2010). By passage of the First Step Act Congress has determined, as a matter of equity and mercy, that if certain conditions are met a trial judge, using his or her discretion, may treat a discreet number of criminal judgments as alterable. Thus, Congress has already determined the cost of modifying these sentences outweighs the need for finality. Accordingly, courts are not constrained by the protections traditionally owed to final judgments and may graft the protections of currently existing constitutional standards onto its exercise of that discretion.

Further support is found in *Dillon v. United States*, 560 U.S. 817 (2010). There, the Court held that *Booker*[9], "which rendered the Guidelines advisory to remedy the Sixth Amendment problems associated with a mandatory sentencing regime," does not apply to sentence reductions under 18 U.S.C. § 3582(c)(2). *Id.* at 819. In so holding, the Court did not apply *Teague's* retroactivity rule, but rather, relied upon the text and scope of § 3582(c)(2). Section 3582(c)(2) authorizes courts to reduce the "term of imprisonment based on a sentencing range that has

---

[9] In *Booker*, the Supreme Court found that when a sentencing judge, bound by mandatory Guidelines, increased the sentencing range under the Guidelines based on facts not found by the jury or admitted by the defendant, the sentence violated the defendant's Sixth Amendment right to a jury trial. To remedy the constitutional problem, the Court rendered the Guidelines advisory. *United States v. Booker*, 543 U.S. 220 (2005).

subsequently been lowered by the Sentencing Commission . . ., if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at § 3582(c)(2). "The relevant policy statement, USSG § 1B1.10, instructs courts proceeding under § 3582(c)(2) to substitute the amended Guidelines range while 'leav[ing] all other guideline application decisions unaffected.'" *Dillon* at 821 (alterations in original) (quoting § 1B1.10(b)(1)). Generally, Section 1B1.10 "forecloses a court acting under § 3582(c)(2) from reducing a sentence 'to a term that is less than the minimum of the amended guideline range.'" *Id.* (quoting USSG 1B1.10(b)(2)(A)). The Court found that given the "limited scope and purpose of § 3582(c)(2)," sentence reductions under that section do not demand that the guidelines be treated as advisory pursuant to *Booker*. *Id.* at 819, 828-830.

Sentence reductions under the First Step Act are governed by a different provision of Section 3582 than the *Dillon* court addressed. First Step Act motions are governed by 18 U.S.C. § 3582(c)(1)(B), which permits courts to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." Unlike the section analyzed in *Dillon*, section 3582(c)(1)(B) does not contain the same restrictions as subsection (c)(2).

> Instead, because statutory minimum and maximum sentences under the 2010 FSA are keyed to drug weight, it is that fact that confines the extent of any sentence reduction in the first instance. Thus, relying on the drug weight attributed to defendants at sentencing, rather than that charged in the indictment, affects more than the judge's discretion within a prescribed statutory range — it determines the prescribed range, and it may raise a defendant's sentence beyond the level otherwise justified by a guilty plea or jury verdict on the drug weight charged in the indictment. Therefore, it triggers the collective requirement of *Apprendi* and *Alleyne* that facts that increase the penalty for a crime beyond the prescribed statutory maximums and minimums be charged in the indictment.

*Slade*, 2019 WL 3061200 at *4; *see also Danforth*, 552 U.S. at 271 (Declaring a rule nonretroactive does not imply "that the right at issue was not in existence prior to the date the 'new rule' was announced. . . . [T]he source of a 'new rule' is the Constitution itself, not any judicial power to

create new rules of law. Accordingly, the underlying right necessarily pre-exists our articulation of the new rule."); *Martin*, 2019 WL 2571148, at *2 ("While *Alleyne* and *Apprendi* do not provide retroactive relief, Congress did intend to apply current statutory penalties retroactively, and, we can assume, current constitutional protections.")

Finally, any interpretive uncertainty here must be resolved against the government "under the rule, repeatedly affirmed, that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States*, 526 U.S. 227, 229 (1999) (internal quotation marks omitted); *see also Rust v. Sullivan*, 500 U.S. 173, 191 (1991) (courts assume Congress "legislates in the light of constitutional limitations"). Illustrative of the government's problematic approach is its final argument that even if the Court disagrees with the government's construction of the statute, the Court should exercise its discretion and deny a reduction because the government would have charged defendant with a drug quantity exceeding 280 grams had he been charged after passage of the Fair Sentencing Act. [Doc. No. 54 at 26]. This appears to be the approach taken in *United States v. Blocker*, 378 F.Supp.3d 1125 (N.D. Fla. 2019). However, it has been rejected by numerous other courts. For example, in *United States v. Dodd*, the court reasoned:

> [S]uch a speculative claim is insufficient. Many things might have been different if this crime had been committed and charged years later or the Fair Sentencing Act had been passed years earlier, and the Court is unwilling to engage in a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered.

*United States v. Dodd*, 372 F.Supp.3d 795, 799 (S.D. Iowa 2019); *accord United States v. Ancrum*, 2019 WL 2110589, *4 (W.D. Va. May 14, 2019). The Court finds the reasoning of the latter line of cases persuasive, and therefore it declines to presume that the government could and would

have been successful in proving, beyond a reasonable doubt, that indispensable element of the criminal offense.

In sum, the Court finds nothing in the text of statute, the legislative history or jurisprudence indicating Congress intended to limit the Court's authority to "impose a reduced sentence" under the First Step Act beyond the limits expressly set forth therein. This interpretation comports with the vast majority of courts that have addressed this issue, which have likewise found the language of the First Step Act indicates Congress' intent to tie eligibility to a defendant's statute of conviction rather than his or her offense conduct. *See e.g.*, *United States v. Davis*, 2019 WL 1054554, *2 (W.D.N.Y. March 6. 2019); *Rose*, 379 F.Supp.3d 223, *5 (collecting cases); *United States v. Allen*, -- F.Supp.3d --, 2019 WL 1877072, *3 & n.4 (D. Conn. April 26, 2019) (collecting cases); *U.S. v. Lutcher*, 2019 WL 3006414, *3 (E.D.La. July 10, 2019); *cf. United States v. Whitmore*, 573 Fed.Appx. 24, 25-26 (2nd Cir. 2014). Had Congress intended to tie a defendant's eligibility for relief under the First Step Act to the quantity of cocaine base attributed to him at sentencing, it could have done so in a much more straightforward manner than by defining "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by . . . the Fair Sentencing Act of 2010." For all of the reasons set forth above, the Court finds the statute of conviction – not the offense conduct – controls whether or not a defendant is eligible for relief under the First Step Act.

Because the Court finds Thompson was convicted of a "covered offense" before August 3, 2010, and because none of the exceptions set forth in section 404(c) of the First Step Act are applicable, the Court finds Thompson is eligible for relief under the First Step Act.

**B.     Scope of Review**

What courts may consider in deciding whether to modify a sentence under the First Step Act is an open question with diverging opinions. While some courts have declined to consider the sentencing factors set forth in Section 3553(a),[10] others have rejected that approach.[11] Section 404(b) of the First Step Act permits "[a] court that *imposed* a sentence for a covered offense . . . [to] *impose* a reduced sentence." 132 Stat. 5194. [12] The Court finds the procedural vehicle by which it may grant relief under the First Step Act is found in Section 3582 of United States Code Title 18, which permits a court to "modify an *imposed* term of imprisonment to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B) (emphasis added). Section 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of *imposing* an appropriate sentence." 18 U.S.C. § 3661. Section 3553(a) is triggered when a court is "determining the particular sentence to be *imposed*." *Id.* at § 3553(a). Section 3582(a) directs courts to Section 3553(a) "if a term of imprisonment is to be *imposed*." *Id.* at § 3582(a). The Court assumes Congress uses the term "impose" in Section 404(b) consistently with other sentencing statutes. *Rose* at *7-9; *cf. U.S. v. Lightfoot*, 724 F.3d 593, 598-99 (5th Cir. 2013) (when modifying a term of imprisonment pursuant to § 3582(c)(1)(B) for substantial assistance, a court is not required to consider the § 3553(a) factors, but declining to resolve whether a court may consider those factors). The Court agrees with the analysis of *Rose* and its conclusion that "[t]he text of the First Step Act, read in conjunction with other sentencing

---

[10] *See e.g. United States v. Martin*, 2019 WL 2289850, *3-4 (E.D.N.Y. May 29, 2019); *United States v. Martin*, 2019 WL 1558817, *4 (E.D.N.Y. April 10, 2019).

[11] *See e.g. Rose*, 379 F.Supp.3d 223, *8.

[12] All emphasis in this paragraph has been supplied by the Court.

statutes, requires the Court to consider all relevant facts, including developments since the original sentence." *Rose* at *7.

Thompson is subject to a statutory sentencing range of ten years up to life imprisonment and a term of supervised release of at least eight years.[13] His advisory guideline range is 120 to 121 months.[14] Thompson has served approximately twelve years of his sentence.

Prior to determining the extent of any reduction of sentence in this matter, the Court will consider the reduced statutory range, the guideline range, the 18 U.S.C. § 3553(a) factors, and any evidence of post-sentencing mitigation. At the government's request, the Court is delaying its final decision as to the extent of any reduction.[15] [*See* Doc. No. 258 at 26; Doc. No. 260] Accordingly, on or before Monday, July 29, 2019, the parties are to file any additional submissions relating to an appropriate sentence in this matter.

SIGNED this 23rd day of July, 2019.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[13] The Court notes had Thompson been indicted under current law, his statutory range would be five to forty years, as his prior conviction would not qualify as a "serious drug felony," as is now required for purposes of an enhanced sentence.

[14] The guideline range would have been 97 to 121 months, absent the enhancement for a prior conviction. In light of the enhancement, Thompson's guideline range is 120 to 121 months.

[15] On July 17, 2019, the Court notified the government by electronic mail that in future First Step Act cases, the government is to include its arguments as to the appropriate sentence in its opposition memorandum in order to avoid additional delays.